AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 25 2025

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Use of
*(Briefly describe the property to be searched
or identify the person by name and address)*

2005 White Chevy Malibu with New Mexico
License Plate Number ALLD89

Case No. 25-781 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and fully incorporated.

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113 | Bank Robbery |

The application is based on these facts:
See Attachment C, which is attached and fully incorporated herein.

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lilly Aldana, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__electronic submission and telephonic swearing__ *(specify reliable electronic means)*.

Date: 4/25/25

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

Gregory J. Fouratt, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched ("Subject Property")

A 2005 White Chevy Malibu with a New Mexico license plate number of ALLD89 and a vehicle identification number (VIN) of 1G1ZU64865F192374, pictured below.



## ATTACHMENT B

### Particular Things to be Seized

1. All records, items, and information that constitute evidence of violations of 18 U.S.C. § 2113 (Bank Robbery) involving **Daniel Guereca** and subject(s) yet to be identified. Such evidence may include, but is not limited to:

    (a) cash, including cash that **Guereca** may have obtained from the PNC Bank robbery—including specific bills that are being tracked by PNC Bank;

    (b) firearms or weapons, including the firearm/weapon that **Guereca** claimed to have had while robbing the PNC Bank in Las Cruces;

    (c) illegal drugs, including drugs that may have been purchased with money from a bank robbery or drugs that that at least played a part in motivating **Guereca** to rob banks;

    (d) items, such as receipts and cell phones (including the phone used to call the PNC Bank shortly before the robbery), that would show **Guereca's** location, travel, and communications during the timeframe of the bank robberies—and/or the location, travel, and communications of others who may have assisted him in robbing PNC Bank;

    (e) other items that may have been used in the commission of the bank robberies or that may provide information concerning **Guereca's** state of mind, motive, or intent.

2. All cell phones that may reasonably contain records or information relating to violations of 18 U.S.C § 2113 by **Guereca** and subject(s) yet to be identified. This warrant further authorizes the forensic examination of any such devices. The terms "records" and "information" include the following:

    (a) Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the cell phone;

    (b) Audio and video calls made to or from the cell phone, along with the duration and date and time each such communication occurred;

(c) Any message logs or messages, whether sent from, to, or drafted on, the cell phone, along with the date and time each such communication occurred;

(d) The content of voice mail messages and audio and video messages stored on the cell phone, along with the date and time each such communication occurred;

(e) Photographs or video recordings;

(f) Information relating to the schedule, whereabouts, or travel of the user of the cell phone;

(g) Information relating to other methods of communications, including the contents of those communications, utilized by the user of the cell phone and stored on the cell phone;

(h) Bank records, checks, credit card bills, account information and other financial records; and

(i) Evidence of user attribution showing who used or owned the cell phone, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

This warrant further authorizes a review of such cell phones' electronic storage media and electronically stored information that is seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT C

**Affidavit In Support of an Application for a Search Warrant**

I, Special Agent Lilly Aldana, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for a warrant to search a vehicle, specifically a **2005 White Chevy Malibu with New Mexico License Plate Number ALLD89**, herein after "**Subject Property**," further described in Attachment A, for the person and things described in Attachment B.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2024. Prior to becoming a Special Agent of the FBI, I earned a Bachelor degree in Criminal Justice and Master's degree in Criminal Justice. Prior to my current position, I was employed for three years as a Federal Probation Officer with the United States Probation Office, Western District of Texas. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. I am currently assigned to the Albuquerque Field Office, Las Cruces Resident Agency, New Mexico. During my career as a law enforcement agent, I have conducted numerous criminal investigations concerning violations of federal criminal laws, such robberies, drug offenses, and violent crimes, and I have received ongoing training in conducting such investigations.

3.      I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other federal agents, as well as agents from state and local law enforcement agencies, and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement was either made to me or was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Because this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## PROBABLE CAUSE

4.      As discussed below, there is probable cause to believe that Daniel GUERECA and others violated 18 U.S.C. § 2113 – *Bank Robbery*. There is also probable cause to believe that the information described in Attachment B will constitute evidence of this crime and also lead to the identification of others who were involved in committing this offense.

**Los Lunas Bank Robbery (February 12, 2025)**

5.      On February 12, 2025, a bank robbery occurred at the US Bank at 2421 Main St Se, Los Lunas, New Mexico, at approximately 5:00 p.m. The suspect was wearing a black hoodie and a white surgical mask. The suspect entered the bank and passed a demand note to the teller, then verbally demanded more money, taking a total of at least $6,000. The bank robber was seen

on video footage, driving a light blue Honda CR-V with heavily tinted windows and no license plates.



*(Photos from US Bank Robbery in Los Lunas, NM, on February 12, 2025)*

**Las Cruces Bank Robbery (February 20, 2025)**

6. On Thursday, February 20, 2025, at approximately 4:51 p.m., video footage shows two individuals walking near Valley Production Dispensary at 2460 South Locust Street, Las Cruces, New Mexico 88001. One of the individuals, later believed to be Daniel GUERECA, is observed wearing a green hat; a white surgical mask; a black hoodie (with the hood covering much of his head and neck)—with the hoodie appearing to be worn underneath a black zip-up Adidas jacket with white stripes on the arms; and dark pants. He is also carrying a piece of paper in his left hand. The second individual had a hood over his head and was wearing a black jacket, a white surgical mask, and bright colored gloves. The individuals were seen driving off in what appeared to be the same light blue Honda CR-V that was seen at the Los Lunas bank robbery on February 12, 2025.



*(Photos of Individuals Near Valley Production Dispensary, on February 20, 2025, at approximately 4:51 p.m.)*

7. About nine minutes later, at exactly 5:00 p.m. on February 20, 2025, the branch banker at PNC Bank at 3800 East Lohman Avenue, Las Cruces, NM 88011, answered a suspicious phone call to this PNC Bank's main line from a cell phone with the number (575) 888-1495. Per the bank's standard business practice, the call was recorded. The caller had a male voice and asked, "I wanted to see if you guys are still open or if it's just the drive-through?" The banker responded that the bank was still open and would remain open until 6:00 p.m. that evening. The banker instantly found the question—essentially trying to figure out if the bank's lobby was open—to be suspicious. The banker has worked at this bank for over 10 years and knows all of the bank's clients—and knows that all of the clients are familiar with the bank's hours. The banker reported that the last time she received a call asking if the bank, and particularly its lobby, was open was about *six years* ago—and shortly after that call was made, someone entered the bank and attempted to cash a false check.

8. At 5:21 p.m. on February 20, 2025, approximately 21 minutes after this suspicious phone call, a female entered the PNC bank (which is located about 3.5 miles or a 10-minute drive from the Valley Productions Dispensary). The female looked around the bank, grabbed a bank

4

slip and a pen, and appeared to briefly write on the slip. The female, however, never approached the bank counter or conducted any transaction. Instead, she simply left the bank—only about 26 seconds after she entered the bank. The banker attempted to follow the female out of the bank, but by the time the banker arrived at the door, the female was already gone.

9. At 5:26 p.m. on February 20, 2025—approximately 5 minutes after the female left the bank—an individual, later believed to be Daniel GUERECA, entered the PNC Bank. GUERECA appeared to be wearing the same green hat, white surgical mask, black hoodie, Addidas jacket, and dark pants that was observed approximately 35 minutes earlier at the dispensary. GUERECA is still carrying a piece of paper in his left hand, but he is now wearing black (or at least dark-colored) sunglasses. Immediately upon entering the bank, he walked directly to the teller and gave the teller the piece of paper in his left hand, which stated:

> THIS IS A ROBERY [sic]! I NEED $20,000 IN BIG BILLS! NO TRACKERS OR DIE PACKS! I AM ARMED! PLEASE COMPLY SO YOU AND YOU COWORKERS GET HOME SAFELY!

10. In response, the teller took the cash out of the register, stacked it up on the counter, and informed GUERECA that there was no more money. GUERECA then took the cash (approximately $3,313.00), placed it in his pockets, and then left the bank on foot at 5:27 p.m. (about 40 seconds after he entered the bank). Video footage from the bank at approximately 5:28 p.m. (about 40 seconds after GUERECA left the bank) appears to show the same light blue Honda CR-V that was seen at both the Los Lunas bank robbery and the dispensary.



*(Photos from PNC Bank Robbery in Las Cruces, NM, on February 20, 2025)*

11.  Shortly after this light blue Honda CR-V was seen on video footage at the PNC bank, it was seen on video footage pulling into a parking that is directly adjacent to a nearby Hooters restaurant (3530 Foothills Rd, Las Cruces, New Mexico), which is approximately 0.3 miles away from the PNC Bank that has just been robbed. After the CR-V is parked in one of the parking spaces, video footage shows four individuals exiting the vehicle and walking together towards a nearby apartment complex—suggesting that at least four individuals may have been involved in the bank robbery.

12.  The Honda CR-V was later determined to have been stolen from the Albuquerque, New Mexico, area. A subsequent search of the car, conducted pursuant to a search warrant authorized by a New Mexico district judge, revealed fingerprints matching those of GUERECA, as well separate fingerprints matching three other individuals. Items that appear to have been used in or connected to the bank robbery were also found in this vehicle—including a black zip-up Adidas jacket, a draft "bank robery [sic]" note, the same green hat seen on the dispensary and bank's surveillance cameras, a lighter that is made to look like a small handgun, a box of white surgical masks, and dark pants. (The FBI is currently conducting DNA testing on some of these items and other items found in the vehicle.)
6

13. Because GUERECA left the demand note at PNC Bank, the note was taken into evidence so that it could be tested for fingerprints. On February 25, 2025, results of the fingerprint test on this note showed a positive match for GUERECA.

14. GUERECA is 28 years old and approximately 6'00" and 185 lbs., and the videos from the Los Lunas bank robbery on February 12, 2025, and the Las Cruces bank robbery on February 20, 2025, both appear to depict an individual with this same height and build.

**Arrest of Guereca (April 7, 2025)**

15. In their efforts to locate GUERECA, law enforcement agents came to believe that he might be residing with (or at least visiting) his mother, Maria Del Pilar Ross, at her residence in Belen, New Mexico. On March 19, 2025, surveillance was conducted on this residence, and a Hispanic male came out this residence matching GUERECA's description. As a result, on March 20, 2025, a search warrant of this residence was conducted. However, GUERECA was not there at the time of the search.

16. On March 26, 2025, the FBI notified the public of this bank robbery by posting an online media alert, which stated that "[t]he FBI and Las Cruces Police Department [were] asking for the public's assistance to locate Daniel Guereca, for his alleged involvement in the robbery of the PNC Bank at 3800 E Lohman Avenue, Las Cruces, on Thursday, February 20, 2025, at approximately 5:30 p.m."[1]

17. At around 2:30 a.m. on April 7, 2025, Deputy Lucas Chavez from Valencia Police Department conducted a traffic stop on the **Subject Property** (i.e., the 2005 White Chevy Malibu

---

[1] *See* "FBI Media Alert: FBI Offers Reward for Information on Whereabouts of Daniel Guereca in Connection to a Las Cruces Bank Robbery" (Mar. 26, 2025), https://www.fbi.gov/contact-us/field-offices/albuquerque/news/fbi-media-alert-fbi-offers-reward-for-information-on-whereabouts-of-daniel-guereca-in-connection-to-a-las-cruces-bank-robbery.

7

with a New Mexico license plate number of ALLD89) in Valencia County, New Mexico. Shortly before the traffic stop, the **Subject Property** was being driven by Breana Gallegos, whom GUERECA later identified as his current girlfriend (and noted that they had been dating for the past year). Deputy Chavez began following this vehicle and observed that the vehicle did not have proper equipment, specifically license plate lights. In addition, Deputy Chavez requested a check on the vehicle's New Mexico license plate (ALLD89) and was informed that there was no record of this vehicle.

18. Deputy Chavez pulled the vehicle over without incident and observed GUERECA in the back seat of the vehicle—and moving around significantly. Deputy Chavez was aware that GUERECA was wanted by the FBI and had outstanding state warrants,[2] so he commended GUERECA not to move (as he was aware that GUERECA also has a violent criminal history). At that time, GUERECA was seen with a green ammunition box between his feet and looking down at a backpack or bag next to him. Deputy Chavez proceeded to give commends, and GUERECA complied until he was successfully placed under arrest. After waiving her Miranda rights, the driver, Ms. Gallegos, stated that "pretty much everything in the back seat" belonged to GUERECA, as well as a bag in the front seat. As Deputy Chavez smelled a strong odor of fentanyl coming from the vehicle and observed burned foil throughout the vehicle, he also asked Ms. Gallegos if there were any drugs in the car. She stated that there was "just fentanyl" in the car.

---

[2] The state warrants included (1) a Bernalillo County District Court "no-bond" felony warrant for "receiving or transferring a stolen motor vehicle, battery upon a peace officer, possession of a controlled substance, [and] aggravated fleeing a law enforcement officer" and (2) a Los Lunas Cagistrate Court $2,500 bond warrant for "receiving or transferring a stolen motor vehicle."

**Guereca's Statements to FBI (April 8, 2025)**

19.     The following day, April 8, 2025, the FBI took custody of GUERECA from the Valencia County Detention Center. After waiving his Miranda rights and acknowledging the waiver of these rights by signing the FBI's FD-395 form, GUERECA agreed to speak with the undersigned as the FBI transported him from the Valencia County Detention Center to the Dona Ana County Detention Center. During his recorded discussion, GUERECA claimed to not know anything about a bank robbery in Las Cruces. He stated that, although he discovered that the FBI was looking for him after they searched his mother's home in March 2025 (and after he did a search for himself online), he did not turn himself in because he was afraid of having to detox.

20.     GUERECA admitted that he was addicted to fentanyl and consumes it in large quantities daily. He also said he must smoke ten fentanyl pills in rapid succession to even feel anything and noted that his drug addiction puts a financial hardship on him. GUERECA then admitted to committing crimes to support his drug habit. Specifically, he admitted that has sold illegal drugs, including heroin, methamphetamine, and fentanyl, for several years to be able to maintain his own addiction. He also admitted that, for at least one of his pending state charges, he knew the vehicle was stolen but still attempted to change its title.

**Probable Cause That Subject Property Has Evidence of Bank Robbery**

21.     There is probable cause to believe that the items described in Attachment B will contain evidence regarding violations of 18 U.S.C. § 2113(a) (Bank Robbery) by Daniel Guereca and others. Specifically, these items may likely include things such as (a) cash, including cash that may have been obtained from the PNC Bank robbery—including specific bills that are being tracked by PNC Bank; (b) firearms or weapons, including the firearm/weapon that GUERECA claimed to have had while robbing the PNC Bank in Las Cruces; (c) illegal drugs, including drugs

that may have been purchased with money from a bank robbery or drugs that that at least played a part in motivating GUERECA to rob banks (in order to fund his drug habit); (d) items, such as receipts and cell phones (including the cell phone used to call the PNC Bank shortly before the robbery, which the FBI is still looking for) that would show GUERECA's location, travel, and communications during the timeframe of the bank robberies—and/or the location, travel, and communications of others who may have assisted him in robbing PNC Bank; and (e) other items that may have been used in the commission of the bank robberies or that may provide information concerning GUERECA's state of mind, motive, or intent.

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

22.Based on my knowledge, training, and experience, I know that electronic devices, including cell phones, can store information for long periods of time. This information can sometimes be recovered with forensics tools.

23.*Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information on any cell phones found in **Subject Property** that reasonably might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how any such cell phone may have been used, the purpose of its use, who used such cell phone, and when. There is probable cause to believe that such forensic electronic evidence might be on such cell phones because:

   a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works and the data generated by such devices may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

10

      Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of such cell phones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of such cell phones to human inspection in order to determine whether it is evidence described by the warrant.

## AUTHORIZATION REQUEST

25. Based on the aforementioned information and investigation, I submit that probable cause exists to search the **Subject Property**, as more particularly described in Attachment A, and to seize the items described in Attachment B. Wherefore, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.

26. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

27. Assistant United States Attorney Grant Gardner reviewed and approved this search warrant application.

Respectfully submitted,

_____
Lilly Aldana
Special Agent
Federal Bureau of Investigation

Electronically subscribed and telephonically sworn to before me on this __25th__ day of April 2025.

_____
The Honorable Gregory J. Fouratt
United States Magistrate Judge

Respectfully submitted,

_____
Lilly Aldana
Special Agent
Federal Bureau of Investigation

Electronically subscribed and telephonically sworn to before me on this __25th__ day of April 2025.

_____
The Honorable Gregory J. Fouratt
United States Magistrate Judge